

**FILED**
April 11, 2022 04:04 PM
ST-2018-CV-00768
**TAMARA CHARLES**
**CLERK OF THE COURT**

### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| GREAT BAY CONDOMINIUM OWNERS ASSOCIATION, INC., )<br><br>Plaintiff, )<br>v. )<br><br>THE NEIGHBORHOOD ASSOCIATION, INC., )<br><br>Defendant. ) | CASE NO. ST-18-CV-768<br><br>ACTION FOR DECLARATORY JUDGMENT, TO CANCEL DEED AND TO QUIET TITLE<br><br>2022 VI Super 41U |

**W. MARK WILCZYNSKI, Esq.**
Law Office of W. Mark Wilczynski
Palm Passage, Ste. C20-22
St. Thomas, Virgin Islands 00804
*Attorneys for Plaintiff*

**MARIA TANKENSON HODGE, Esq.**
Hodge & Hodge
1340 Taarneberg
St. Thomas, Virgin Islands 00802
*Attorneys for Defendant*

**DAVID F. WENTZEL, Esq.**
Wentzel Law Offices
77 W. Washington St., Suite 2100
Chicago, Illinois 60602
*Attorneys for Plaintiff*

**CARTY, RENÉE GUMBS,** Judge

## MEMORANDUM OPINION

¶1 **THIS MATTER** came on for successive hearings on November 19, 2021, and December 8, 9, and 13, 2021, on Defendant's, The Neighborhood Association, Inc. ("NA"), "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" filed on November 12, 2021. Plaintiff, Great Bay Condominium Owners Association, Inc. ("Great Bay"), filed its "Motion to Dissolve or Modify Temporary Restraining Order" and the pertinent exhibits on November 15, 2021. Defendant filed its response on November 18, 2021. NA sought to enjoin Great Bay from demanding payment of special assessments fees incurred from 2017 to 2021 for a

*Great Bay Condominium Owners Association, Inc.*      **2022 VI Super 41U**
  *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

restaurant and lounge on the premises of the Ritz-Carlton Hotel, St. Thomas, Virgin Islands. Under the Declaration of Condominium and its amendments, Commercial Unit-1 (hereinafter referred to as "CU-1," the "lounge," or "Grand Palazzo Club"), which operated as the Grand Palazzo Club, is a restaurant/lounge created for the exclusive use of NA members, who are the owners of two-bedroom suites located in the Gardenia and Heliconia Buildings. On October 22, 2021, NA members were collectively assessed over $1 million in maintenance fees, late charges, and interest. To fully understand the nature of Defendant NA's request for injunctive relief, the Court must first start with the underlying claims of the Complaint.

¶2    In December 2018, Great Bay filed an action against NA seeking to cancel the deed and to quiet title; and requesting declaratory judgment. On September 20, 2017,[1] NA conveyed a condominium deed to Great Bay for Commercial Unit-1. This deed conveyance from Salvatore M. Cutrona, Sr., NA's President, to Abigail Chung, then-Vice-President of Great Bay, embodied the transfer of CU-1, located on the fifth floor of Building G, Gardenia, to Great Bay. Great Bay refused to accept the deed and denied any conveyance or obligations to pay the maintenance fees and expenses associated with CU-1. Great Bay has demanded that NA continue, despite the deed conveyance, to pay all expenses associated with the restaurant/lounge.

¶3    Prior to and during this action, Great Bay assessed NA for the CU-1 maintenance fees for the years 2017, 2018, and 2019.[2] Those amounts remained unpaid. Then on October 22, 2021, while the underlying action remains pending as to the validity of the deed and its conveyance,

---

[1] The Virgin Islands experienced two Category 5 storms, Hurricanes Irma and Maria, on September 6, and September 20, 2017, respectively. *See* National Oceanic and Atmospheric Administration and National Weather Service, "National Hurricane Center Tropical Cyclone Report: Hurricane Irma" published on September 21, 2021, at 25, and "National Hurricane Center Tropical Cyclone Report: Hurricane Maria" published February 14, 2019, at 30.

[2] Plaintiff's Exhibit 13 at 2.

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

Great Bay disseminated invoices in excess of $1 million levied directly against NA members for the amounts owed for the years 2017 through 2021 triggering the request for the temporary restraining order and preliminary injunction.

¶4    The Court issued the Temporary Restraining Order ("TRO") on November 12, 2021, and held a status conference on November 16, 2021. After hearing preliminary arguments at the status conference, the Court orally denied the motion to dissolve or modify the TRO and proceeded towards a preliminary injunction hearing.

¶5    At the hearings, the Court heard the sworn testimonies of Salvatore M. Cutrona Sr., NA's President, Marsha Leighton-Herrmann, Director of Finance for the Ritz-Carlton Club St. Thomas, Abigail Chung, President of Great Bay Condominium Owners Association, and Thomas Doyle, Treasurer of Great Bay Condominium Owners Association. For the following reasons, the Court will grant the motion for injunctive relief due to a clear showing that relief is warranted when the factors are considered and weighed.

## I.    Brief factual background.

¶6    NA sought to enjoin Great Bay from unilaterally assessing the 288 NA members for the full amount of five years of past common charges Great Bay has assessed for the commercial unit. Great Bay Condominium Owners Association consists of 1,260 residence interests. There are 80 units, each possessing 12 deeded fractional interests. This portion makes up 960 interests. In addition, there are 288 deeded fractional interests situated in two (2) buildings, Gardenia ("Building G") and Heliconia ("Building H"). NA is comprised of the two (2) buildings, but NA owners are also members of Great Bay. Of the 288 fractional interests belonging to NA, forty-nine

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

percent (49%) are owned by the Ritz-Carlton and the Marriott Vacation Club Trust.[3] The remaining fifty-one percent (51%) are individual owners. The remaining twelve (12) interests are associated with CU-1. CU-1 was initially designated as a food and beverage service with a lounge area for the exclusive use of residence interest owners of two-bedroom suites in Buildings G and H. The suites in both buildings were constructed with galley kitchens and no dining rooms, unlike the other larger units at the Ritz-Carlton with larger kitchens and dining areas. Thus, CU-1 was created solely for the purpose of having a food and beverage service and lounge to accommodate these suite owners.

¶7     On May 10, 2002, the Ritz-Carlton, through a Declaration of Condominium, established the Great Bay Condominium Owners Association, Inc., pursuant to Chapter 33, Title 28 of the Virgin Islands Code and recorded the Declaration in the Office of the Recorder of Deeds for the District of St. Thomas/ St. John. Great Bay, a not-for-profit association, is located on the property of the Ritz-Carlton Hotel. NA is also a not-for-profit association on the premises. On the same day, the Supplementary Declaration of Condominium was also recorded and created the Residence Interests[4] in the Condominium. During the ensuing months, several amendments to both declarations were created to meet the needs of the interested parties. The First and Second Amendments to the Declaration became effective on July 5, 2002, and December 6, 2002, respectively. There were also First and Second Amendments to the Supplementary Declaration which became effective on December 6, 2002, and January 7, 2004, respectively.

---

[3] *See* Plaintiff's Motion to Dissolve or Modify Temporary Restraining Order at 2.
[4] *See* November 19, 2021, Hearing Transcript at 16, lines 1-8 (defining the residence interests as deeded fractional interests. Since the condominiums are not full ownership, each unit has twelve (12) deeded fractional interests that provide owners twenty-one (21) days of use on a rotating basis.).

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶8    On November 15, 2005, Ritz-Carlton signed the Third Amendment to the Supplementary Declaration and the Fourth Amendment to the Declaration, which both amendments created NA and the plans to refurbish Building H which would house twelve two-bedroom suites. On June 6, 2006, with the Fifth Amendment to the Declaration, Building G was conveyed from the Ritz-Carlton hotel to the interval ownership Ritz-Carlton Destination Club program, thus adding Building G to Great Bay. Building G added twelve more two-bedroom suites to NA and created the Commercial Unit-1 on the top floor. The conflicts and controversy in this matter are rooted in these amendments.

¶9    NA was formed for the sole purpose of taking ownership, operation, and maintenance of CU-1. Although NA was formed in November 2005, it was not until 2006 when NA began to operate and pay for CU-1. Two years later the Ritz-Carlton formally conveyed the deed to CU-1 to NA on December 20, 2008. From 2006 through 2016, only NA members were responsible for common area charges associated with this lounge; i.e., only 288 members of the 1,260 were responsible. These charges were assessed by Great Bay to NA and in turn, NA issued individual assessments for these charges to its members. These CU-1 common charge assessments were in addition to the individual assessments each condominium owner is subject to by Ritz-Carlton for their suites.

¶10    The underlying issue here is whether the conveyance of the Condominium Deed dated September 20, 2017, from NA to Great Bay is considered a valid conveyance, thus determining whether the October 22, 2021 invoices assessed to each NA member was a proper assessment. Despite an absence of a ruling in the underlying action, coupled with Great Bay's outright rejection of the deed conveyance and continued accrual of maintenance fees, Great Bay unilaterally

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

proceeded to issue, on October 22, 2021, invoices to all 288 NA members demanding payment for all common charges assessed from September 2017 through October 2021. NA alleges their conveyance of the deed to Great Bay on September 20, 2017, relieved NA members of the duty to pay common area charges on the building for those years and consequently Great Bay, as the owner, is entirely responsible for the maintenance of the lounge and the outstanding costs.

¶11    In their October 22, 2021 demand letter, Great Bay required payment in full for the five years of past assessments by November 22, 2021, stating: "[i]f the invoice is not paid in full within 30 days the Members Association will take further action as provided for in the Declarations." The letter directed NA members to refer to the Declarations and Amendments on the Ritz-Carlton's webpage.

¶12    To support their respective positions, each party introduced several exhibits consisting of the Declaration, Supplementary Declaration, several amendments, Articles of Incorporation and Bylaws for each association, and Condominium Deeds. The Declarations and Amendments set forth several options Great Bay may exercise to address delinquent assessments, including locking members out of their condominium units and preventing them from accessing all amenities of the Ritz-Carlton premises until the assessments are paid in full. The regular annual assessments were issued by the Ritz-Carlton on October 1, 2021, with a deadline of November 2, 2021, payment options, and other punitive measures the Ritz-Carlton may take to address any delinquent member, including a "lock-out" option. As stated *supra*, three weeks later the invoices in dispute were issued to each NA member at approximately $3,500 per member, totaling over $1 million, and were due by November 22, 2021.

*Great Bay Condominium Owners Association, Inc.*
   *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶13    Upon receiving this second notice, NA filed the instant motion for a temporary restraining order and preliminary injunction. The Court granted the temporary restraining order on November 12, 2021. On November 14, 2021, Great Bay issued a Unanimous Written Consent directing the third-party billing company, Concord Servicing Corporation, to rescind the invoices issued on October 22, 2021.[5] However, despite inquiries, Great Bay did not refund any NA members who had already paid the assessments.[6] On December 13, 2021, the Court issued a bench ruling granting the preliminary injunction.

## II.    Analyzing the four factors of determining whether to issue a preliminary injunction in favor of the Defendant.

¶14    When determining whether to issue a preliminary injunction, the trial court considers the following factors on a sliding-scale basis: 1) the probability of success on the merits; 2) the threat of irreparable harm if the injunction is denied; 3) the balance of the harm between the parties if granted; and 4) the public interest.[7] The Supreme Court, in *Yusef v. Hamed,* 59 V.I. 841, 854 (V.I. 2013), concluded that the soundest rule for the Virgin Islands is "a sliding-scale test, wherein a strong showing on one factor may decrease the weight assessed to other factors" allowing an injunction where "the probability of success on the merits is low if the Court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low."

### A. NA has shown a reasonable probability of success on the merits.

¶15    First, the Court must analyze NA's probability of success on the merits. "When addressing

---

[5] *See* Defendant's Exhibit N-1, Unanimous Written Consent in Lieu of a Special Meeting of the Directors of Great Bay Condominium Owners Association, Inc.

[6] *See* December 9, 2021, Hearing Transcript at 196 lines 12-13.

[7] *3RC & Co. v. Boynes Trucking Sys., Inc.* 63 V.I. 544, 553 (V.I. 2015).

a reasonable probability of success on the merits, the movant must show that it has 'a reasonable chance, or probability, of winning,' not that it will actually prevail on the merits at trial."[8] The movant must introduce evidence making out a *prima facie* case.[9] Here, NA has adequately validated its request for injunctive relief by showing pursuant to the Declaration of Condominium and its relevant Amendments, which govern both Great Bay and NA, and through application of Title 28 of the Virgin Islands Code, that Great Bay has improperly assessed the common charges of CU-1.

¶16    The pertinent Amendments to this motion are the Third Amendment to the Supplementary Declaration and the Fourth and Fifth Amendments to the Declaration. As stated *supra*, on November 15, 2005, the Third Amendment to the Supplementary Declaration and the Fourth Amendment to the Declaration established the Neighborhood Association in conjunction with the construction proposal for Building H, which would house twelve two-bedroom suites and require these residence owners to be members of the newly established Neighborhood Association.

¶17    On June 6, 2006, the Fifth Amendment to the Declaration added Building G to Great Bay, including twelve more two-bedroom suites and CU-1 on the fifth floor. The Fifth Amendment also detailed NA's ownership and responsibilities regarding CU-1.

¶18    In December 2008, Ritz-Carlton[10] (also referred to as the "Developer"), conveyed a condominium deed to CU-1 to NA. From 2008 until 2013, CU-1 provided food and beverage services and was used solely for the use and enjoyment of NA members and occupants in Buildings G and H. After being operated and used exclusively by NA for a period of five years, NA renovated

---

[8] *SBRMCOA, LLC v. Morehouse Real Estate Invs., LLC*, 62 V.I. 168, 187 (V.I. Super Ct. 2015).

[9] *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980).

[10] Sometimes referred to as the "Declarant."

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

CU-1 from a food and beverage service to a fully operational restaurant, the Grand Palazzo Club. On August 8, 2013, NA and Great Bay entered into a "Residence Owners Agreement" ("ROA"), which allowed for members of Great Bay to access the Grand Palazzo Club and dine there for a fee and, in turn, Great Bay would assess NA for the charges of CU-1, but Great Bay would pay these charges.[11] This agreement was amended twice on November 1, 2014, and November 1, 2015, both amendments modifying the agreement to allow for Great Bay members to have more access to the lounge and its amenities, and modified the payment of the CU-1 assessments.[12] The First Amendment modified the ROA to allow for Great Bay members to participate in the breakfast service, receive a fifteen percent (15%) discount on menu prices for meals and beverage services, and access wine storage lockers without charge. Additionally, NA agreed to pay Great Bay a monthly aggregate equal to fifteen percent (15%) of the charges incurred by the members and their guests during the month for all meals and beverage services.

¶19     Under the Second Amendment, the ROA was modified again and charged Great Bay members for breakfast services at the same rate NA members paid and additionally changed the discount for members, from fifteen percent (15%) on beverage services to ten percent (10%). Most importantly, the Second Amendment modified the agreement where Great Bay would pay an annual fee for access to the lounge in an amount equal to half of the annual dues obligation of NA to Great Bay with respect to CU-1.[13]

---

[11] *See* Plaintiff's Exhibit 15, Residence Owners Agreement dated August 8, 2013.
[12] *See* Plaintiff's Exhibit 16, First Amendment to the Residence Owners Agreement dated November 1, 2014, and Exhibit 17, Second Amendment to the Residence Owners Agreement, dated November 1, 2015.
[13] *See Id.*

*Great Bay Condominium Owners Association, Inc.*
   *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶20    This arrangement between NA and Great Bay continued until the end of 2016.[14] In 2016, NA alleges they were in the process of transferring ownership to Great Bay and assisting with transition of the operation of the Grand Palazzo Club to keep it functional as a restaurant.[15] Great Bay disputes this; however, acknowledged these discussions in their Complaint in a different, but related case, ST-2019-CV-00650.[16] Neither party provided documentation to support either contention; however, on September 20, 2017, NA signed a deed conveying CU-1 to Great Bay, which lead to the filing of the Complaint.

¶21    Great Bay rejects the deed conveyance and contends discovery is needed to determine the validity of the deed, as Mr. Cutrona, Sr. created five originals of the deed. The five originals were distributed accordingly: a copy sent via Fed Ex was mailed to Abigail Chung, then-Vice-President of Great Bay in 2017, a copy sent to John Doyle, then-President of Great Bay, a copy retained by Mr. Cutrona, Sr., a copy transmitted to NA's then-Secretary Marc Betesh, and a final copy was sent to NA's counsel.

¶22    On March 6, 2018, NA's counsel recorded the deed and transmitted a copy of the recorded deed on March 23, 2018, to Great Bay's counsel. Not only does Great Bay move to cancel the deed as an improper conveyance, but they also question the validity of the deed because of what appears to be different signatures on five originals. Mr. Cutrona, Sr. testified that he created five duplicate copies, containing identical language.[17] Title 28 Virgin Islands Code § 132 provides: "[t]he record of any document in the office of the recorder of deeds, *or a copy of such record*, shall be admissible in evidence in any court in the Virgin Islands." In the context of a duplicate deed, the federal rules

---

[14] November 19, 2021, Hearing Transcript at 23 lines 7-25 and 24 lines 1-23.
[15] *Id.*
[16] *See* Plaintiff's Exhibit 13 at 5.
[17] December 13, 2021, Hearing Transcript at 82 lines 15-25 and 83 lines 1-25 and 84 lines 1-4.

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

of evidence provide: "a duplicate is admissible in the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." *See Enfield Green Homeowners Ass'n v. Francis*, 340 F.Supp.2d 590, 594 n.6 (D.V.I. 2004). The Court finds there is no genuine issue raised as to the authenticity of the original as the five duplicates sent to members of both parties are identical, but for slight differences in the signatures. Still, Great Bay argues discovery is needed to determine whether there was a proper conveyance.

¶23    Since the conveyance on September 20, 2017, NA has not paid common assessment dues on CU-1. NA argues Great Bay had an obligation to accept the deed, so long as it was free of service contracts and other obligations, pursuant to the Fourth Amendment to the Declaration. Arguing, therefore, NA does not own the Grand Palazzo Club and does not owe these assessments. Great Bay argues the conveyance is not valid because they did not accept the deed, had no obligation to accept the deed, and regardless of ownership, NA's members are responsible for the CU-1 assessments per the Declaration. The Third Amendment to the Supplementary Declaration and the Fourth and Fifth Amendments to the Declaration provide enough context to ascertain whether these invoices were assessed properly and should be enjoined.

### i.    Legal Analysis

¶24    The Supreme Court of the Virgin Islands has held that a condominium association's by-laws and governing documents are to be construed "according to the general rules governing the construction of statutes and contracts." *See Weary v. Long Reef Condominium Association*, 57 V.I. 163, 170 (V.I. 2012) (citing *Singh v. Singh*, 9 Cal Rptr.3D 4, 27-28 (Cal Ct.App.2004)). When the governing documents of condominium associations are clear and unambiguous, the Court must

*Great Bay Condominium Owners Association, Inc.*
    *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

**2022 VI Super 41U**

follow their plain meaning. *See Id.* at 169. "To determine whether a contract is ambiguous, we resort to principles of contract interpretation, keeping in mind that our primary purpose is to ascertain and give effect to the parties' objective intent." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017). The Court cannot "rewrite [the Declaration or Amendments] by looking to evidence outside the four corners of the [Declaration or Amendments] to determine the intent of the parties." *Id.* at 628.

¶25    Here, the Third Amendment to the Supplementary Declaration established NA as a member of Great Bay and its responsibilities for CU-1. It also lays the premise as to why both parties dispute the interpretation of certain provisions of the Declaration. The Third Amendment, paragraph four (4) states, in pertinent part:

> "The twelve (12) Residences which are the subject of this amendment are Two Bedroom Suites and, as such, all Owners of Residence Interests therein shall in addition to being Members of the Condominium Association,[18] be mandatory members of the Neighborhood Association, whose contemplated sole purpose shall be to own and operate a Commercial Unit.... <u>More particularly, and in accordance with the separate organizational and governing documents of the Neighborhood Association, its members shall control the Neighborhood Association and be responsible for all costs and expenses related to the ownership and operation of the Commercial Unit **owned by it**, including but not limited to any services that it may elect to provide.</u>"

NA premises its entire argument on ownership. NA points to this language to emphasize that the responsibility for the assessments is only for commercial units which NA owns.

¶26    NA's Bylaws support NA's contention. The Bylaws provide for the Powers of the Board[19] which gives the Board the authority to "purchase, lease or accept conveyance of the Lounge

---

[18] The "Condominium Association" is referring to Great Bay. *See infra* at 11.
[19] NA's Bylaws Article IV, § 3.

*Great Bay Condominium Owners Association, Inc.*
    *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

2022 VI Super 41U

without the vote of the Members,"[20] … "and convey property,"[21] as well as the power "to make and collect assessments, and use and expend said assessments to carry out the purposes and powers of the [Neighborhood] Association."[22] The Board is elected by the members of the Association and is responsible for carrying out the affairs of the Association. Within NA's own Bylaws, the Board has the ability to convey CU-1. Hence, they argue, if NA no longer owns it, they cannot and should not be held responsible for its upkeep. To the contrary, Great Bay contends that this same language in the Third Amendment shows that the suite owners are exclusively responsible for the assessments. The above-quoted language and similar language are reiterated throughout the Declaration, but the Court finds the Fourth and Fifth Amendments to the Declaration provide more clarity to the plain meaning of the Declaration.

¶27    The Fourth Amendment to the Declaration, paragraph five (5), effective November 15, 2005, further specifies the rights and duties of NA. The Fourth Amendment provides, in pertinent part:

> "The Declarant or an Owner of a Commercial Unit may also convey a Commercial Unit, or any subdivision thereof in the case of Declarant, to the Association for no or nominal consideration without the consent of any other Owner or the Association, and *the Association shall be obligated to accept such conveyance.* A Commercial Unit will only be transferred to the Association free of service contracts or other obligations other than as provided in the Declaration, By-laws and Rules and Regulations, all as amended from time to time."

NA relies heavily on this Amendment to support their argument that not only did NA have the authority to convey the deed, but also Great Bay had the duty to accept the deed, therefore Great Bay owns CU-1. Conversely, Great Bay argues the "association" being referred to in the Fourth

---

[20] *Id.* at §3 (c).
[21] *Id.* at §3 (l).
[22] *Id.* at §3 (d).

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

Amendment refers to NA. Considering Great Bay's interpretation, it would mean NA can only convey the unit back to themselves.

¶28     If the Court were to adopt Great Bay's interpretation of the Fourth Amendment, it would read as follows:

> "[t]he Declarant or an Owner of a Commercial Unit may also convey a Commercial Unit, or any subdivision thereof in the case of Declarant, to the [Neighborhood] Association for no or nominal consideration without the consent of any other Owner or the [Neighborhood] Association, and the [Neighborhood] Association shall be obligated to accept such conveyance."

This reading would imply that the Owner, who at the time was the Neighborhood Association by virtue of this Amendment, would be able to convey the unit they own back to themselves without consent. This argument seems illogical and undermines the plain reading of the Declaration.

¶29     The Court interpreted that the Association referred to in the Fourth Amendment is Great Bay. Each set of governing documents defines which association is being referred to. Throughout the Declaration and the Supplementary Declaration, and their amendments, Great Bay is referred to as the "Condominium Association," the "Association," and the "Members Association," whereas the Neighborhood Association is exclusively referred to as "Neighborhood Association." The Declaration defines the "Members Association" as: "Great Bay Condominium [Owners] Association, Inc., a not-for-profit Virgin Islands corporation established by Declarant … hereinbefore and hereinafter the 'Members Association'".[23] This language conveys to the Court that the Declaration, and its amendments, are specifically tailored to the duties and obligations of Great Bay, except for where in the amendments there are defined obligations of NA. For example,

---

[23] The Condominium Declaration ¶13, at 13.

in the Third Amendment to the Supplementary Declaration Section four (4), paragraph one (1)

describes Great Bay as both the Condominium Association and the Members Association, stating:

> "[A]ll Owners of Residence Interests therein shall in addition to being Members of
> the Condominium Association, be mandatory members of the Neighborhood
> Association..."[24]

and then,

> "[i]n addition to the lien in favor of the Members Association against each
> Residence or Residence interest, ... [these members are also] subject to a lien in
> favor of the Neighborhood Association..."[25]

Whereas NA is explicitly referred to as "Neighborhood Association" both times in the amendment.

The language in this amendment is consistent with the October 22, 2021 letter sent from Great Bay

to NA which refers to itself as both "the Association," and the "Members Association," in the

context of examining the Declaration.[26]

¶30     This proposition is further supported in NA's Bylaws and Articles of Incorporation, which

reflect the same interchanging of "Association," and the "Members Association,"[27] when referring

to NA in those documents which were specifically tailored to encompass NA's duties and

obligations, similar to the Declaration's encompassing of Great Bay.[28] As stated, condominium

associations' declarations and bylaws are governed according to contract and statutory

interpretation. When a contract is ambiguous, the court's purpose is to ascertain and give effect to

---

[24] Third Amendment to the Supplementary Declaration § 4, ¶1.

[25] Third Amendment to the Supplementary Declaration § 4, ¶2.

[26] Defendant's Exhibit B, October 22, 2021, Letter from Great Bay to NA Members, at 3.

[27] Plaintiff's Exhibit 8, NA's Bylaws, at 1: "The name of the association is The Neighborhood Association, Inc. (hereinafter referred to as the "Association").

[28] Plaintiff's Exhibit 9, Declaration of Condominium, at 14 ¶13: "The operations of the Members Association shall be conducted by Great Bay Condominium [Owners] Association, Inc. a not-for-profit Virgin Islands corporation established by Declarant ... (hereinbefore and hereinafter the "Members Association"). Plaintiff's Exhibit 9 at 33: "The name of the association shall be Great Bay Condominium Owners Association, Inc. (sometimes hereinafter the "Association")....

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

2022 VI Super 41U

the parties' objective intent and not the subjective intentions of each party. *See Phillip v. Marsh-Monsanto*, at 625. "When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings." *Streibich v. Underwood*, 54 V.I. 488 (V.I. 2021) (quoting *Penncro Assocs. V. Spring Spectrum, L.P.*, 499 F.3d 1151, 1156-57 (10th Cir. 2007)). When considering the text of the documents as a whole and the objective intent of the parties, it can be reasonably interpreted that the general "Association" referred to in each document can only mean the association as defined in that particular document, unless specified otherwise. Under the plain meaning of the Declaration and evidenced by Great Bay's letter and the Developer's intent to explicitly refer to NA as the "Neighborhood Association," throughout the Declaration and NA's governing documents, it appears that the "Association" in this paragraph of the Fourth Amendment is referring to Great Bay.[29]

¶31    To further solidify their position, NA argues it is NA, and not the individual suite owners, who formerly owned the Grand Palazzo Club and NA was liable for assessments, therefore the individual invoices were improperly assessed. However, under NA's Articles of Incorporation and Bylaws, NA and its members are one in the same. The membership interest in NA is established at the time the deed to the suite interest is recorded with the Recorder of Deeds for St. Thomas/ St. John.[30] The Articles of Incorporation, Article V, Section 4 further states:

> "Membership shall be appurtenant to and may not be separated from ownership of any said Suite Interest and ownership of such Suite Interest shall be the sole qualification for membership. Membership shall automatically terminate

---

[29] *See supra* at FN 12.
[30] NA's Articles of Incorporation Article V, §4.

*Great Bay Condominium Owners Association, Inc.*
   *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

upon sale or other disposition of title, in accordance with the provisions of the Declaration."[31]

Article V, Section 5 clarifies:

> "Membership in the [Neighborhood] Association may not be assigned, hypothecated or transferred in any manner except with the conveyance of a Suite Interest. Membership shall terminate upon the termination of the Declaration or upon transfer of ownership of a Suite Interest, provided the transfer is accomplished in accordance with all of the provisions of the Declaration."[32]

The articles of incorporation are coherent with the longstanding practice of NA billing the members for the CU-1 assessments as NA serves as the conduit for the assessments. The issuance of direct assessments to each NA member is not pivotal, but the mere issuance of the assessments is. Although NA contends the assessments directly to NA members was improper, it is not an issue of concern because even if Great Bay had assessed NA, which they did in 2017, 2018, and 2019,[33] NA would have still refused to pay, which they have.

¶32    The CU-1 assessments are directly tied to ownership of CU-1; therefore, the invoices were improperly assessed as ownership has yet to be determined. The Fifth Amendment to the Declaration supports this position. The Fifth Amendment states the Ritz-Carlton conveyed CU-1 to the Neighborhood Association for the "exclusive benefit of the occupants ... of the Two Bedroom Suites..." Further specifying in paragraph five (5):

> "All Owners of Residence that are designated as a Two Bedroom Suite shall, in addition to being Members of the Condominium Association, be mandatory members of the Neighborhood Association *whose sole purpose is to own and operate Commercial Unit CU-1*, which shall be conveyed by the Declarant to the Neighborhood Association and utilized for the *exclusive benefit* of the occupants from time to time of the Two Bedroom Suites, whether or not such occupants are Members of the Neighborhood Association, *and as more particularly described in*

---

[31] *Id.*

[32] *Id.* at §5.

[33] Plaintiff's Exhibit 13 at 2.

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

> *the organizational and governing documents of the Neighborhood Association.* As a member of the Neighborhood Association, Owners of Two Bedroom Suites are responsible for all costs and expenses of the ownership and operation of Commercial Unit CU-1, including but not limited to any services that it may elect to provide."

Great Bay relies on this, and similar language throughout the Declaration, to argue that the assessments are proper because it is the suite owners' responsibility to continue paying the assessments on CU-1, regardless of who owns CU-1. Great Bay uses the fact that Marriott Vacation Club Trust and the Ritz-Carlton, together, own forty-nine percent (49%) of the shares of NA and paid a portion, approximately eight (8) interests worth, of their assessments to support Great Bay's contention suite owners are personally liable. Great Bay argues NA members are required to pay the assessments and then dispute the charges. Under paragraph nine (9) of the Declaration, "[n]o Member may withhold payment of any regular or special assessment or any portion thereof because of any dispute which may exist between that Member and the Members Association, … but rather each Member shall pay all assessments when due pending resolution of any dispute."[34] However, the CU-1 assessments are separate and apart from the annual assessments which follow the "pay now, dispute later" process allowed for in the Declaration.[35] The CU-1 assessments are common assessments under Title 28 § 909, *see infra*, similar to the annual assessments, which are linked to each individual unit, (thus creating the personal liability for those assessments). The Fifth Amendment ties the personal liability of CU-1 to the operation and ownership of CU-1.

---

[34] The Condominium Declaration ¶9, at 12.
[35] *Id.*

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶33     This interpretation is supported by the Developer's emphasis on the responsibility of CU-1 being connected to NA member's "exclusive benefit" in the Fifth Amendment. As the owner with exclusive control and use of the Grand Palazzo Club, NA had the responsibility for the assessments because only NA members were benefitting from the lounge; as opposed to all members of Great Bay benefitting from the other common assessments, such as maintenance fees for sidewalks and upkeep of other common facilities. However, if the conveyance of CU-1 is proper, and that issue has not been determined, then Great Bay would have the exclusive benefit of CU-1, not NA.

¶34     Yet, Ms. Chung, Great Bay's President, testified that under Great Bay's interpretation of the Declaration, NA members would be responsible for these assessments in perpetuity. She stated that the suite owners will be liable for as long as they are members of the Neighborhood Association. Further explaining, irrespective of the purported property transfer to Great Bay, "when a suite owner sells their unit, they don't have the obligation anymore."[36] Mr. Doyle, Great Bay's Treasurer, defended this position to a greater extent even stating that for example if a rich person purchased the Grand Palazzo Club to operate a restaurant on his own accord, NA suite owners would still be responsible for the common assessments.[37] This interpretation of the Declaration overlooks the language of the Fifth Amendment which signals to the Court that the responsibility for these assessments is inextricably tied to ownership of the commercial unit.

¶35     Finally, Title 28 of the Virgin Islands Code § 909 supports NA's argument that the common charges are proportional to ownership interest. Section 909 provides: "[t]he common profits of the

---

[36] December 9, 2021, Hearing Transcript at 70, lines 12-13.
[37] *Id.* at 114, lines 4-17.

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

property shall be distributed among, and the common expenses shall be charged to, the apartment owners according to the percentage of the undivided interest in the common areas and facilities."

¶36    Plaintiff argues that these assessments are an issue of real property as restrictive covenants running with the land; therefore, the assessments are not tied to ownership of CU-1 as NA states. The Declaration explicitly states that the provisions, including the obligation to pay annual assessments, are covenants running with the land.[38] However, the Fourth and Fifth Amendments, which are specific to CU-1, tie the responsibility of the CU-1 assessments to ownership by the Association as a whole. If it is later determined that the conveyance was proper and Great Bay has been declared the owner of the Grand Palazzo Club since September 20, 2017, then the logical conclusion of § 909 would be that the assessments must be distributed among all Great Bay members, and not only the 288 NA members. Therefore, the analysis depends on whether the CU-1 assessments are common assessments and which language is more germane to the issue, the amendments or the Act.

¶37    Throughout the hearings, the assessments associated with CU-1 were referred to as annual assessments, annual maintenance fees, members' dues, and common charges. Mr. Doyle testified that all of these terms essentially had the same meaning and that they are common charges.[39] He specified, "[o]ne of the expenses of the [Neighborhood] Association is their share in the common expenses which is budgeted by GBCOA every year. ... CU-1 has a share in the common expenses of the Condominium ... CU-1 has an obligation to pay 18 Interests of dues to cover its share of the condominium expenses – general condominium expenses."[40] When asked directly whether

---

[38] The Condominium Declaration ¶15, at 14.
[39] December 9, 2021, Hearing Transcript at 110 lines 12-25 and 111 lines 1-5.
[40] *Id.* at 34 line 25 and 35 lines 1-13.

**Great Bay Condominium Owners Association, Inc.**
   *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

**2022 VI Super 41U**

those CU-1 general condominium expenses were the subject of the invoices, Mr. Doyle said, "yes".[41] Hence, while the ownership of CU-1 has yet to be determined, and taking into consideration the governing documents, the evidence and testimony presented, and a reading of Title 28, NA has set forth more than a *prima facie* case to show a reasonable likelihood of success on the merits.

**B. The threat of irreparable harm to NA members is likely if injunctive relief is denied.**

¶38    Next, the Court looks at the threat of irreparable harm to NA if the assessments are prematurely issued. A movant suffers irreparable harm where there is "certain and imminent harm for which a monetary award does not adequately compensate." *Yusef v. Hamed*, 59 V.I. 841, 854 (V. I. 2013). The outstanding assessments for CU-1 are in excess of $1 million dollars. Ms. Chung testified there was about $760,000 in maintenance fees, $116,000 in late fees, and $142,000 of interest over the five-year period.[42] As provided for in the Declaration, one of the penalties for a delinquent owner is the management company's ability to lockout a member from his or her residence and all Ritz-Carlton facilities. This was specified in the October 1, 2021 letter sent from Ritz-Carlton to all Great Bay members regarding the annual dues. This letter cites to Section 8.2 of the Supplementary Declaration, *Section VI, Assessments of the Affiliation Agreement*, and states:

> "Members who have unpaid annual assessments, late fees and/ or interest owing to the Association, shall be 'locked-out' from all Ritz-Carlton Destination Clubs, including their home club in St. Thomas. 'Lock-out' includes no access to reserved allocations or space available reservations at any Destination Club. If you do not timely make payment of all amount due and owing for common charges, the 'lock-out' will be implemented and shall remain in place until all amounts due and owing, including interest and late charges, are paid in full."

---

[41] *Id.* at 35 line 18.
[42] December 13, 2021, Hearing Transcript at 23, lines 22-25.

*Great Bay Condominium Owners Association, Inc.*
   *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

**2022 VI Super 41U**

Ms. Marsha Leighton-Herrmann, Director of Finance for the Ritz-Carlton Club St. Thomas, testified that this is a standard letter that the management company uses; originally drafted in 2010 and sent to members annually ever since.[43] In the October 22, 2021 letter sent from Great Bay to NA members regarding the additional assessments, Great Bay included language which allows Great Bay to take necessary actions, which implied their capability to lockout members from their residences.[44] NA contends that this option to lockout a member from their residence constitutes irreparable harm.

¶39    Great Bay's sole argument regarding "lock-out" is that they do not intend to, nor do they have the ability to lockout members. Mr. Doyle testified that the Board met in September to discuss the past due assessments.[45] He further stated that the Board decided that the only penalties will be monetary, and they would not implement lock-outs.[46] Despite this assertion, neither Mr. Doyle nor Mrs. Chung provided meeting minutes or any other documentary evidence to support such a claim. Yet, Great Bay argues only the management company has the capability to lock-out members and that the Ritz-Carlton's October 1, 2021 letter explicitly providing for a lock-out measure only applies to annual assessments. This argument is unpersuasive.

¶40    Ms. Leighton-Herrmann testified that the lock-out system is used against delinquent members and inhibits them from being able to check into their suite for their allotted time.[47] As the managing company for both associations, the Ritz-Carlton develops the budgets for both. The Ritz-Carlton has a contract with Concord Servicing Corporation ("Concord"), a third-party billing

---

[43] December 8, 2021, Hearing Transcript at 23, lines 2-6.
[44] Defendant's Exhibit B, at 4 stating: "If the invoice is not paid in full within 30 days the Members Association will take further action as provided for in the Declarations."
[45] December 9, 2021, Hearing Transcript at 172, lines 24.
[46] *Id.* at 181 lines 1-6.
[47] December 8, 2021, Hearing Transcript at 19, lines 7-16.

*Great Bay Condominium Owners Association, Inc.*
 *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

**2022 VI Super 41U**

company, to assist with disseminating invoices and collecting payments. Once Concord develops a list of delinquent members, they send the list to Members Services and anyone who has not paid has their account locked so they cannot use their time or reservations at the club or any other destination club until the balance is paid. Ms. Leighton-Herrmann further stated the lock and key system for the condominium owners is similar to a hotel reservation; members reserve their stay and check-in at the security desk where they are handed an electronic key which will unlock their units.[48] When Ritz-Carlton implements this punitive measure against a delinquent member, the front desk clerks are notified and withhold keys.

¶41    Additionally, Mr. Cutrona, Sr. testified that the Program Manager for the St. Thomas Club is The Cobalt Travel Company, L.L.C ("Cobalt"), a Marriott subsidiary.[49] Cobalt enforces lock-out procedures against delinquent members for both annual and special assessments. Notably, the October 22, 2021 letter from Great Bay to NA members came only three weeks after the Ritz-Carlton sent their annual letter to each NA member which contains language that the lock-out procedures apply to *"all amounts due and owing for common charges."*[50] Irrespective of Great Bay's argument that they have no intent on using lock-out as a punitive measure, there was no conclusive testimony or any documentary evidence presented to establish Great Bay has no authority to demand or request Ritz-Carlton to institute a lock-out. Moreover, there was nothing to preclude Great Bay from implementing policies and contracting directly with Cobalt, as they did with Concord, to enforce the lock-out mechanism. The timing of these two letters and the

---

[48] December 8, 2021, Hearing Transcript at 21 lines 16-25 and 22 lines 1-20.
[49] December 13, 2021, Hearing Transcript at 100 lines 19-25 and 101 lines 1-3.
[50] Defendant's Exhibit C, October 1, 2021 Letter from Ritz-Carlton to all Great Bay members, at 2.

**Great Bay Condominium Owners Association, Inc.**
**v. The Neighborhood Association, Inc.**
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

explicit threat of lock-out in the Ritz-Carlton's letter is a contributory factor for a reasonable person to conclude that the threat of a lock-out resulted in apparent showing of irreparable harm to NA.

¶42 The harm, or the appearance of it, is not mitigated by virtue of the existence of alternative measures. Neither is it mitigated or absolved because Great Bay has not decided on that specific course of action. Mr. Doyle testified that the Great Bay Board met prior to the issuance of the letter[51] and the Board discussed four options they could take against delinquent members: (1.) lock-outs, (2.) placing a lien on the unit, (3.) renting out the member's unit, or (4.) seeking monetary judgments against the delinquent members. The Court has no assurances in Great Bay's position in the absence of minutes or written affirmation to support the Board's intent of not instituting a lock-out measure for failure to pay the invoices timely. Great Bay's reliance that NA members will not be harmed because Great Bay did not explicitly state they would lock-out delinquent members fails to recognize the "intangible benefits associated with property ownership, such as the increased sense of pride, well-being, and security attendant to the right to choose when and how to use, maintain and cherish one's property...." *Hansen v. Government of the Virgin Islands*, 53 V.I. 58, 91 (V.I. Terr. Ct. 1999). "A timeshare plan is a form of property ownership that allows owners of interests in the plan to share rights to use the timeshare plan property, where typically each owner is allotted their own period of time for use." *Great Bay Condominium Owners Association, Inc. v. Government of Virgin Islands*, 2018 WL 4690372 *1 (D.V.I. 2018).

¶43 Further, the Third Circuit has held that "where 'interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest.'" *Minard Run Oil Co. v. U.S. Forest Service*, 670 F.3d 236, 256 (3d. Cir.

---

[51] December 9, 2021, Hearing Transcript at 172, lines 24.

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

2011) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). While it is established that timeshare owners have real property interests, NA is "still required to demonstrate that irreparable harm will result from a temporary cessation of its alleged property right." *North Jersey Vineyard Church v. Township of South Hackensack*, 2016 WL 1365997 *3 (D. N.J. 2016). The threat of irreparable harm must be "a presently existing one and not a remote or speculative possibility." *Id.* Here, NA has adequately shown that the threat of lock-out is an imminent threat and that it is highly probable Great Bay would exercise this punitive measure.

¶44     This proposition is supported by Mr. Doyle's testimony. The only evidence provided was Mr. Doyle's recollection, particularly representing one vote as a Board member, of the decision to not impose lock-outs, or the other measures. But even if there was written evidence to show they will not exercise the lock-out option, there is still nothing to preclude Great Bay from subsequently changing their decision so as to enforce a non-monetary punitive measure to ensure NA members pay the assessments. The insistence, without documentary support, that the Board would likely only seek money judgments against the members is not convincing.

¶45     Even if this lock-out was imaginary or NA's unfounded speculation, Great Bay confirmed NA's suspicions when they issued the December 3, 2021 letter instituting a lock-out measure. The letter reads, in pertinent part:

> "*Effective November 12, 2021 if a member did not pay their dues they were considered delinquent and were locked out of using their time and privileges at the club until they became current.*"

This letter magnifies NA's concerns about being locked out of their units is not some speculative misreading of the Declaration regarding the action that Great Bay may take, but is an action Great Bay has taken and will likely take again.

*Great Bay Condominium Owners Association, Inc.*           **2022 VI Super 41U**
  *v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

¶46      Further, this letter came three weeks after the Court issued the TRO and ordered Great Bay to rescind the invoices sent to NA. Yet, this letter signals to the Court that lock-outs are standard and used by Great Bay against delinquent members. In fact, this Court believes, the intervention of the TRO, which was issued before Great Bay's November 22, 2021 deadline to pay the assessments, is the only measure that prevented Great Bay from implementing the lock-out. This future threat of lock-out was sufficient to constitute irreparable harm.

¶47      In addition to being deprived of his property, Mr. Cutrona, Sr. testified to other consequences of being locked out of his unit.[52] He testified that members are provided with the information of their allotted reservations sixteen months in advance in order to provide members enough notice to arrange airfare, rent out their units, arrange schedules, and book other aspects of their trips.[53] Locking members out of their units will severely harm NA members, including having to make alternative, more costly arrangements regarding airfare and lodging, or even cancelling the trip altogether. Mr. Cutrona, Sr. stated that regarding his 2022 reservations he has offered one of his weeks to the winner of a charity auction.[54] He described the embarrassment he would face if he were locked out of his unit and then must rescind his offer.[55]

¶48 Even more concerning is Great Bay's option under the Sixth Amendment to the Supplementary Declaration, which allows Great Bay to rent out the residences of NA members who are more than sixty (60) days delinquent in paying their assessments.[56] Even if the member becomes current and in good standing, the member will have no right to use their allocated

---

[52] December 8, 2021, Hearing Transcript at 105 lines 9-25, 106 lines 9-25, and 107 lines 1-2.
[53] *Id.*
[54] Affidavit of Salvatore M. Cutrona, Sr.'s at ¶13.
[55] *See Id.*
[56] Sixth Amendment to the Supplementary Declaration at 2, ¶1(a).

**Great Bay Condominium Owners Association, Inc.**
 *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

residence interest of that time.[57] Without injunctive relief, all NA members who have not paid the CU-1 assessments, despite paying the annual assessments of their respective unit, would be delinquent and in jeopardy of having their units being rented. The Court finds that locking members out of their residence is punitive enough; however, to exercise the option to rent out the members' units and to deny their use after becoming current, even if the unit is not rented, is clearly irreparable harm. Despite Great Bay's insistence that the only penalty would be money judgments, without injunctive relief there is nothing to prevent Great Bay from electing these punitive measures. "The alternatives presented by [Great Bay] do not negate the existence of irreparable harm to [NA]." *See SBRMCOA, LLC v. Beachside Associates, LLC* 2015 WL 5168350 *5 (V.I. Super. Ct. 2015). "Such a harm is irreparable because it is impossible to restore past deprivation of property use." *Id.* Thus, the threat and ability of irreparable harm is enough to enjoin Plaintiff's actions. *See SBRMCOA, LLC v. Beachside Associates, LLC* 2015 WL 5168350 *4 (V.I. Super. Ct. 2015). Considering these additional harms, coupled with the deprivation of property, the Court finds this factor weighs heavily in favor of NA.

### C. Great Bay will not be harmed if injunction is granted.

¶49 As to the third factor, the balancing of harms between the parties, the court looks at whether the nonmoving party will suffer irreparable harm if this injunction is issued, and if so to what extent.[58] The court also considers whether the injunction would destroy the status quo, as one of the goals of a preliminary injunction is to maintain the status quo.[59] Here, the underlying litigation has been pending for four years and Great Bay has not collected on these assessments for five

---

[57] *Id.* at ¶1(c).
[58] *SBRMCOA, LLC*, 62 V.I. at 188.
[59] *Id.*

years. Great Bay argues that they will be harmed by the issuance of an injunction because they cannot use those funds for the betterment of the association. Despite a lack of testimony, Great Bay argues there are currently exorbitant maintenance costs associated with operating CU-1. Mr. Doyle testified that Great Bay is responsible for the maintenance and upkeep of the entire Ritz-Carlton premises, including CU-1, and Great Bay needs these funds to maintain CU-1.[60]

¶50    Ms. Chung testified that on several occasions Great Bay has held dinners with private chefs and other events in the Grand Palazzo Club during this five-year period and has excluded NA from any use of the lounge.[61] Mr. Cutrona, Sr. also stated NA requested to hold their annual Board meeting in the lounge which was denied.[62] In fact, since September 20, 20217, Great Bay has outright rejected any use of common space within the condominium, including the Grand Palazzo Club, member's reception area, and member's lounge.[63] Great Bay did not refute this testimony.

¶51    For the last five years, Great Bay has had exclusive control and use of CU-1. Great Bay argues NA members abandoned their use of CU-1, and under § 920 of the Condominium Act remain liable for common charges because the duty to pay assessments cannot be abandoned. However, NA members did not abandon their use of CU-1, but rather have been denied access to the property by Great Bay for failure to pay the assessments. Yet, despite Great Bay's exclusive use of CU-1, they expect NA's members alone to be responsible for approximately two hundred thousand dollars ($200,000) of assessments annually for a unit they cannot access without permission from Great Bay and a unit they have been precluded from using.

---

[60] December 9, 2021, Hearing Transcript at 64 line 25, 65 lines 1-9, and 66 lines 17-20.
[61] December 13, 2021, Hearing Transcript at 75 lines 4-13, 22-25.
[62] December 13, 2021, Hearing Transcript at 76 lines 1-3.
[63] December 8, 2021, Hearing Transcript at 119, lines 1-24.

*Great Bay Condominium Owners Association, Inc.*
   *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶52     Further, Great Bay argues they would be harmed if an injunction was issued because of the costs Great Bay incurred to invoice the NA members themselves. Ms. Leighton-Herrmann testified that Great Bay approached the management company to get their assistance with the issuing of the CU-1 assessment invoices, but the Ritz-Carlton declined.[64] Ms. Chung testified that because the Ritz-Carlton was not going to issue the assessments, Great Bay was "forced" to bill the NA members themselves, requiring Great Bay to separately contract with Concord to invoice the NA members.[65] Great Bay argues that by having to re-issue these assessments they will be harmed.

¶53     However, Great Bay was able to promptly notify NA members the invoices were rescinded by reason of the TRO with a mass email distribution to such members, at no added cost to Great Bay, thus it can be concluded that Great Bay can re-issue the invoices at minimal-to-no cost. The same invoices could simply be reissued by email, and the same members Great Bay sought to collect from in its October 2021 invoices would be readily billed again, with whatever additional interest or late fees accrued. Additionally, if Great Bay were to prevail in the underlying litigation, they can collect the assessments for the past five years with interest and include the time between the issuing of the injunction and the resolution and will be made whole at the conclusion. Therefore, considering the *de minimis* cost associated with reissuing the invoices, which Great Bay can recover with interest and that Great Bay has had the exclusive use of CU-1 for the last five years, the Court finds there are no significant monetary or other harms associated with Great Bay not reissuing the invoices.

---

[64] December 8, 2021, Hearing Transcript at 51, lines 10-18.
[65] December 13, 2021, Hearing Transcript at 22 lines 9-25 and 23 lines 1-10.

*Great Bay Condominium Owners Association, Inc.*
  *v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion

2022 VI Super 41U

¶54    Similarly, as Great Bay contracted directly with Concord to disseminate the invoices, they may also contract directly with Cobalt to enforce the lock-out procedures. Without the preliminary injunction, there would be nothing to prevent Great Bay from contracting with Cobalt. In weighing the harms to both parties, the Court finds NA would face much greater harm if the situation remained unchanged. By granting the injunction in favor of NA, the status quo would remain; NA members will still have full access to their property, and should Great Bay ultimately prevail, Great Bay would be able to collect the monies due for these assessments with interest.

**D. The public has a significant interest in the facilities at the Ritz-Carlton.**

¶55    With respect to the public interest, consideration should be given to Great Bay's necessity to use these funds for the betterment of the Ritz-Carlton complex as a whole. However, the public also has a significant interest in Associations complying with the Virgin Islands Condominium Act, their respective Declarations and all Amendments, and their own governing and organizational documents. As previously stated, the statutory construction of § 909 is interpreted as the common area charges for CU-1 are the responsibility of the owner, which has yet to be determined.

¶56    Furthermore, the public has an interest in ensuring that rights of condominium association members are not undermined. For the last five years, Great Bay has had control of CU-1, to the outright exclusion of NA, despite Great Bay's contention that NA is responsible for the maintenance fees forever. The Court has to take into consideration the apparent inequity in the mandate of an association to pay assessments in perpetuity for a property it may neither own nor has access to.

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
**Case No. ST-18-CV-768**
**Memorandum Opinion**

2022 VI Super 41U

Accordingly, the Court finds that all four factors weigh in favor of granting injunctive relief

to the Defendant. An appropriate Order follows.

Dated: April ⅼⅼ , 2022

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____

Latoya Camacho
Court Clerk Supervisor

GREAT BAY CONDOMINIUM OWNERS )
ASSOCIATION, INC., )
            )  CASE NO. ST-18-CV-768
            )
    Plaintiff, )  ACTION FOR DECLARATORY
            )  JUDGMENT, TO CANCEL DEED
   v. )  AND TO QUIET TITLE
            )
THE NEIGHBORHOOD ASSOCIATION, INC., )
            )
    Defendant. )  Cite as 2022 VI Super 41U
            )

## ORDER

The Court having issued a Memorandum Opinion on this date, it is hereby

**ORDERED** that Defendant's motion for preliminary injunctive relief is **GRANTED**; and it is further

**ORDERED** that preliminary injunction is imposed upon Great Bay Condominium Owners Association; and it is further

**ORDERED** that Great Bay Condominium Owners Association is **ENJOINED** from disbursing invoices upon Neighborhood Association members for any assessment fees regarding Commercial Unit-1, the restaurant and lounge, until final judgment of this matter; and it is further

**ORDERED** that Plaintiff's Motion to Dissolve or Modify Temporary Restraining Order is **DENIED**; and it is further

**ORDERED** that the Temporary Restraining Order entered on November 12, 2021, is **LIFTED**; and it is further

*Great Bay Condominium Owners Association, Inc.*
*v. The Neighborhood Association, Inc.*
Case No. ST-18-CV-768
Memorandum Opinion Order
Page Two

Cite as 2022 VI Super 41U

**ORDERED** that copies of this Order shall be distributed to W. Mark Wilczynski, Esquire,

David Wentzel, Esquire, and Maria Tankenson Hodge, Esquire.

Dated: April \_\_11\_\_, 2022

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 4 / 11 / 2022

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 11, 2022 04:06 PM
ST-2018-CV-00768
**TAMARA CHARLES**
**CLERK OF THE COURT**



# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

| | |
|---|---|
| **GREAT BAY CONDOMINIUM OWNERS ASSOCIATION, INC.,** | Case Number: **ST-2018-CV-00768** |
| **Plaintiff** | Action: **Declaratory Judgment** |
| v. | |
| **THE NEIGHBORHOOD ASSOCIATION, INC.,** | |
| **Defendant.** | |

## NOTICE of ENTRY
### of
## <u>MEMORANDUM OPINION</u>

**To:** W. Mark Wilczynski, Esquire      Maria T. Hodge, Esquire

David F. Wentzel, Esquire     Clerk of the Court, Tamara Charles

Superior Judges & Magistrates     General Counsel

---

**Please take notice that on April 11, 2022**

a(n)     **MEMORANDUM OPINIION**

dated     **April 11, 2022**     **was entered**

**by the Clerk in the above-titled matter.**

**Dated:**   **April 11, 2022**

                            **Tamara Charles**
                            **Clerk of the Court**

By:

                            **Audrey C. Brin**
                            **Court Clerk II**