IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
FILED
June 29, 2026 10:27 AM
SCT-Civ-2022-0002
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| GREAT BAY CONDOMINIUM OWNERS ASSOCATION, INC. | ) S. Ct. Civ. No. 2022-0002 |
| Appellant/Defendant, | ) Re: Super. Ct. Civ. No. 768/2018 |
| | ) (STT) |
| v. | ) |
| | ) <u>**Consolidated Cases**</u> |
| THE NEIGHBORHOOD ASSOCIATION, INC. | ) **S. Ct. Civ. No. 2022-0002** |
| Appellee/Plaintiff. | ) **S. Ct. Civ. No. 2022-0024** |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas and St. John
Superior Court Judge: Hon. Renee Gumbs-Carty

Considered: November 9, 2022
Filed: June 29, 2026

Cite as: 2026 VI 15

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN,** Associate Justice.

APPEARANCES:

**W. Mark Wilczynski, Esq.**
Law Office of W. Mark Wilczynski, P.C.
St. Thomas, U.S.V.I.

**David F. Wentzel, Esq.**
Wentzel Law Offices
Chicago, IL
*Attorneys for Appellant,*

**Maria Tankenson Hodge, Esq.**
Hodge & Hodge
St. Thomas, U.S.V.I.
*Attorney for Appellee.*

**OPINION OF THE COURT**

**CABRET, Associate Justice.**

¶ 1      Great Bay Condominium Owners Association, Inc. ("Great Bay") appeals the Superior Court's April 11, 2022 interlocutory order granting a preliminary injunction to the Neighborhood Association, Inc. ("NA"). The Superior Court's order enjoined Great Bay from issuing assessments to NA Members for past due common area charges and maintenance expenses associated with a commercial condominium unit at the Ritz-Carlton Club in St. Thomas, referred to as ("CU-1") for the years 2017, 2018, and 2019. For the reasons that follow, we affirm the Superior Court's decision that imposed a preliminary injunction upon Great Bay.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

¶ 2      On May 31, 2002, the owner of the Ritz-Carlton Hotel in St. Thomas (the "Developer"), executed and recorded a "Declaration Establishing a Plan for Condominium Ownership" (the "Declaration") to build four buildings, designated A through D, containing approximately 80 residential condominium units. On the same day, the owner recorded the "Supplementary Declaration of Condominium for the Club at Great Bay Condominium" (the "Club Declaration"), which created a fractional form of ownership that divided each of the residences into twelve "Residence Interests." *Id*. Each Residence Interest provides the owner (a "Club Member") the exclusive use of the residence for a 21 day period. Buildings A through D encompass 960 residential interests.

¶ 3      In 2005, after buildings A through D were completed, the Developer submitted two additional buildings to the condominium development. The Developer first submitted Heliconia ("Building H") through the "Fourth Amendment to Declaration," which it executed on November 15, 2005, and recorded on December 9, 2005. Seven months later, the Developer submitted Gardenia ("Building G") through the "Fifth Amendment to Declaration," which it executed on June 6, 2006 and recorded on July 18, 2006. On the top floor of Building G, the

developer created a Commercial Unit ("CU-1") for the purposes of providing food and beverage services to the residents of Buildings H and G. Buildings H and G have "Two Bedroom Suites."

¶ 4     Great Bay is a large condominium association representing the owners of all condominium interests in the Ritz-Carlton Hotel complex. NA is a comparatively smaller condominium association within Great Bay which represents only the owners of interests in buildings H and G, and consists of 288 owners. NA was initially established in 2005 for the sole purpose of owning and operating CU-1 and providing food and beverage services for the exclusive benefit of occupants of the Two Bedroom Suites in Buildings H and G. All owners of the residences that are designated as Two Bedroom Suites are members of Great Bay and must also be members of NA.

¶ 5     On December 20, 2008, the Developer executed a Condominium Deed conveying CU-1 in fee simple absolute to NA. However, NA began operating and paying for all the costs and expenses associated with CU-1 from 2006 through 2016. Great Bay assessed charges for the CU-1 to NA and NA would issue individual assessments to each of its members. Therefore, the food and beverage services provided at CU-1 were financed by the NA members, and in return, those members were given the exclusive benefit of those services.[1] As a result, NA

---

[1] Item 5 of the Fifth Amendment to Declaration provides:

All Owners of Residences that are designated as a Two Bedroom Suite shall, in addition to being Members of the Condominium Association, be mandatory members of the Neighborhood Association whose sole purpose is to own and operate Commercial Unit CU-1, which shall be conveyed by Declarant to the Neighborhood Association and utilized for the exclusive benefit of the occupants from time to time of the Two Bedroom Suites, whether or not such occupants are Members of the Neighborhood Association, and as more particularly described in the organizational and governing document of the Neighborhood Association. As a member of the Neighborhood Association, Owners of Two Bedroom Suites are responsible for all costs and expenses of the ownership and operation of Commercial Unit CU-1, including but not limited to any services that it may elect to provide. The furnishings located in the Commercial Unit, meaning all furniture, appliances, moveable equipment, utensils, carpeting, accessories, and other personal property located therein, were previously utilized in connection with the operation of the adjacent Ritz-Carlton Hotel.

members paid two levels of annual assessments: first, their proportionate share of the common expenses paid by all members of Great Bay based on the percentage ownership allocation of their ownership interest; and second, their proportionate share of expenses relating to CU-1 including both the cost of food and beverage services and CU-1's share of the annual common maintenance expenses.

¶ 6      On September 10 and 11, 2017, Great Bay and NA were negotiating the Deed Transfer Agreement's terms and conditions via email transferring CU-1 from the NA to Great Bay. During the course of this correspondence, Great Bay notified NA it would only accept an unrestricted deed with no condition or option that would revert CU-1 back to NA if CU-1 was no longer a restaurant offering food services. Great Bay also requested that NA transfer to Great Bay settlement funds held by NA which were derived from litigation initiated by NA and Great Bay over defective design and construction of renovations to CU-1. Great Bay intended to use these funds for CU-1. Great Bay informed NA that those conditions must be met on or before November 1, 2017, or NA would be responsible for the 2017 maintenance fees and assessments. On September 20, 2017, despite not reaching an agreement on the conditions established by Great Bay, NA's President Salvatore M. Cutrona, Sr., executed a condominium deed transferring CU-1 to Great Bay. However, on November 2, 2017, Abigail Chung, then-Vice President of Great Bay, rejected NA's tender of the CU-1 deed because NA had not complied with the conditions outlined in the September 11, 2017 email.

¶ 7      Although Great Bay did not sign an agreement accepting ownership of CU-1 nor did it provide a formal statement of acceptance, NA notified Great Bay on November 11, 2017 that NA considered the tender to have been properly made and to be self-executing and effective, even without a formal statement of acceptance from Great Bay. NA supports its position that CU-1 was effectively transferred to Great Bay because NA's bylaws provide NA's board of

directors the power to convey real property without the need to obtain members' approval and based on Great Bay's obligation to accept title to CU-1 from NA.[2] As such, a dispute arose concerning the ownership of CU-1 and whether NA or Great Bay would be responsible for paying CU-1's annual assessments and maintenance fees.

¶ 8     On December 5, 2018, Great Bay initiated the underlying action against NA (the "Deed Action") based on the disagreement over the validity of the deed conveyance and obligations to pay CU-1's annual assessments and maintenance fees. Great Bay sought to void the deed transferring the title of CU-1 to Great Bay, to quiet title to CU-1, and requested a declaratory judgment finding that NA, rather than Great Bay, owned CU-1. NA filed its answer on January 19, 2019, denying material allegations of the complaint and asserting several affirmative claims, including certain equitable defenses. On November 15, 2019, Great Bay filed its second action in the Superior Court for debt and breach of contract (No. ST-19-CV-650), seeking payment from NA for common maintenance expenses of CU-1 from 2017 through 2019, certain settlement monies derived from litigation, and a breach of contract claim dealing with certain renovations to CU-1. On December 23, 2019, Great Bay filed a "Motion to Consolidate" the two above cases. NA filed its opposition to the motion to consolidate on January 15, 2020, and Great Bay filed a reply on January 29, 2020. The Superior Court denied the consolidation of the actions on the premise that although the two cases share common facts, the legal issues

---

[2] Item 5 of the Fourth Amendment to Declaration provides:

> The Declarant or an Owner of a Commercial Unit may also convey a Commercial Unit, or any subdivision thereof in the case of Declarant, to the Association for no or nominal consideration without the consent of any other Owner or the Association, and the Association shall be obligated to accept such conveyance.

are distinct, and consolidation would risk delay and confusion in the action requesting the declaratory judgment.[3]

¶ 9    Throughout the course of the pending actions in the Superior Court, Great Bay issued annual assessments to NA for CU-1 which NA did not pay based on the purported deed conveyance.[4] On October 22, 2021, Great Bay issued invoices to all 288 NA Members for $3,532.37 per owner, totaling approximately $1 million, for common maintenance expenses for CU-1 that had gone unpaid from 2017 through 2021.[5] Great Bay required NA Members to pay the assessments by November 22, 2021. As a result, on November 12, 2021, NA filed a motion seeking issuance of a temporary restraining order ("TRO") and a preliminary injunction to enjoin Great Bay from collecting any dues or common charges for CU-1 from NA Members and precluding NA Members' use or occupancy of their residences. That same day, the Superior Court granted the motion and issued the requested TRO. On November 15, 2021, Great Bay filed its motion to dissolve or modify the TRO, or in the alternative, vacate the portion of the TRO directing Great Bay to rescind the invoices and require the NA to post bond in accordance with Rule 65(c) of the Virgin Islands Rules of Civil Procedure. On November 19, 2021, the Superior Court denied Great Bay's motion and extended the TRO until the conclusion of the preliminary injunction hearing. The Superior Court held a hearing for the preliminary injunction on November 16, November 19, December 8-9, and December 13, 2021. On December 15, 2021, the Superior Court issued an order extending NA's TRO until

---

[3] Case No. ST-2018-CV-768, *Great Bay Condominium Owner's Ass'n v. Neighborhood Ass'n*, is an action for declaratory judgment, to cancel the deed, and to quiet title, whereas Case No. ST-2019-CV-650, *Great Bay Condominium Owners Ass'n v. Neighborhood Ass'n*, is an action breach of contract and debt.

[4] Great Bay invoiced the NA with maintenance fees in the following amounts: $188,330.61 in 2017, $96,200.94 in 2018, and $169,524.00 in 2019.

[5] The $3,532.37 figure comprised of: $2,635.77 for CU-1's share of the common annual maintenance expenses from September 2017 through October 2021; $402.87 attributed to late fees; and $493.63 in interest.

the issuance of an order of preliminary injunction and setting deadlines for submittal of the parties' briefs and other scheduling matters.[6]

¶ 10    On January 14, 2022, Great Bay filed a Notice of Appeal seeking review of the Superior Court's decision granting NA injunctive relief in *Great Bay Condominium Owner's Ass'n, Inc. v The Neighborhood Ass'n, Inc.*, ST-2018-CV-00768.[7] On April 26, 2022 Great Bay filed an "Amended Notice of Appeal" with a separate appeal number of SCT-CIV-2022-0024 appealing the issuance of the preliminary injunction. By order of May 20, 2022, this Court granted Great Bay's Motion to Consolidate its two appeals and file a single brief on the issues in both appeals.[8]

## II.    JURISDICTION AND STANDARD OF REVIEW

¶ 11    This Court has jurisdiction over appeals from "[i]nterlocutory orders of the Superior Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 4 V.I.C. § 33(b)(1). As such, we have jurisdiction to review the April 11, 2022 order granting the preliminary injunction as an interlocutory order, while the remaining claims in the underlying action remain unresolved. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012) (citing *In re Najawicz*, 52 V.I. 311, 324-25 (V.I. 2009)).

¶ 12    Generally, this Court reviews the Superior Court's findings of fact for clear error, while the review of the Superior Court's conclusions of law is plenary. *See Mercer v. Bryan*, 53 V.I.

---

[6] On April 11, 2022, the Superior Court issued its memorandum opinion and order granting a preliminary injunction in favor of NA.

[7] Great Bay timely filed its notice of appeal on January 14, 2022, initiating the appeal designated SCT-CIV-2022-0002.

[8] Following consolidation of the SCT-CIV-2022-0002 and the SCT-CIV-2022-0024 cases, Great Bay filed a second brief on June 21, 2022, alleging five new claims, four of which were not included in either notice of appeal. NA filed a Motion to Strike Great Bay's second brief and this Court granted that motion on August 15, 2022. Therefore, Great Bay's May 27, 2022 brief is the guiding appellant's brief.

595, 598 (V.I. 2010). The decision to grant or deny an injunction, however, is reviewed for abuse of discretion. *In re Najawicz*, 52 V.I. at 328; *see also Stevens v. People*, 55 V.I. 550, 552 (V.I. 2011). An abuse of discretion "arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Petrus*, 56 V.I. at 554 (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)). A factual determination is clearly erroneous "if it is completely devoid of evidentiary support or bears no rational relationship to the supportive evidentiary data." *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584, 592 (2018).

## III. DISCUSSION

### A. Pleading Requirements for Injunctive Relief

#### i. *The Neighborhood Association's Motion Was Procedurally Proper Under Rule 65*

¶ 13      Great Bay argues chiefly that the Superior Court erred in granting a TRO and preliminary injunction because the Neighborhood Association did not request such relief in its pleadings Great Bay also argues that as a result, NA's pleadings ran afoul of Virgin Islands Rules of Civil Procedure Rules 8 and 15, relating to pleading requirements and time to amend pleadings, respectively. *See* V.I.R. CIV. P. 8, 15.

¶ 14      We first note that Rule 65, not Rule 8 nor Rule 15, controls the requirements for seeking injunctive relief in the Virgin Islands. V.I.R. CIV. P. 65. Importantly, nothing in Rule 65 requires that a party include a request for injunctive relief in a pleading. When it initially moved for the TRO, NA submitted a detailed memorandum of law and attorney's affirmation outlining the grounds for its request, including detailing the immediate and irreparable harm that NA would suffer if its members were locked out of their units or forced to pay the assessments at issue. In its attorney's affirmation, NA also detailed its efforts to provide Great Bay with notice

of its intention to move for the TRO.[9] When the Superior Court issued its April 11, 2022 order granting a preliminary injunction to NA, it provided notice to Great Bay.[10] Accordingly, there was no procedural error under Rule 65.

¶ 15    Since it is Rule 65, not Rule 8 or Rule 15 that governs TROs and preliminary injunctions, Great Bay's arguments relating to the latter rules prove unavailing. Because Rule 8 governs only pleadings, and contains no provision relating to TROs or preliminary injunctions, Rule 8 does not apply to the case at bar. *See also* V.I.R. CIV. P. 7(a).[11] In other words, by the terms of Rule 7(a), applications for injunctive relief such as the one made by NA are decidedly not pleadings, and thus Rule 8 cannot apply to such an application.

¶ 16    For this same reason, Great Bay's argument that NA's application for injunctive relief ran afoul of Rule 15 and that NA would have been required to seek Great Bay's permission to amend its pleadings in order to seek injunctive relief also fails. Since Rule 15 relates to the amendment of pleadings, and NA's application for injunctive relief was not a pleading, Rule 15 cannot apply. *See* V.I.R. CIV. P. 15. Importantly, NA's application for injunctive relief was not a supplemental pleading under Rule 15(d) because it did not seek to add a new claim to

---

[9] Rule 65(b)(2)(B) requires applications for TROs without notice to contain such a statement.

[10] The extensive motion practice and hearings that occurred related to the preliminary injunction further evidence the notice given to Great Bay.

[11] Rule 7(a) provides that:

> Only these pleadings are allowed:
> (1) a complaint;
> (2) an answer to a complaint;
> (3) a counterclaim or crossclaim;
> (4) an answer to a counterclaim designated as a counterclaim;
> (5)  an answer to a crossclaim;
> (6) a third-party complaint;
> (7) an answer to a third-party complaint;
> (8) if the court orders one, a reply to an answer;
> (9) a complaint in intervention; and
> (10) an answer to a complaint in intervention.

V.I.R. CIV. P. 7(a).

NA's pleadings, but merely to preserve the status quo of the parties pending resolution of the underlying dispute—in which NA's position taken in its answer remained unchanged. *See Gourmet Gallery Crown Bay, Inc.*, 68 V.I. at 601*; 3RC & Co., Inc., v. Boynes Trucking Sys.*, 63 V.I. 544 (2015). In other words, the scope of the case as set out by the pleadings did not change—NA did not seek to supplement its answer in order to raise a new claim based on new facts. Rather, NA sought to maintain the status quo of the parties while the question of CU-1 ownership was decided—the question originally presented by the pleadings. Accordingly, Rule 65, not Rule 15, governed NA's application for injunctive relief.

¶ 17      Great Bay primarily relies on *Caribbean Healthways, Inc. v. James*, 55 V.I. 691 (2011), for the proposition that NA was required to assert its application for injunctive relief in its answer. That case, however, is distinguishable from the case at bar. *Caribbean Healthways* concerned a plaintiff who sought injunctive relief on the theory that they held an express easement, but later moved for summary judgment and a permanent injunction on the theory that they held an implied easement. *Caribbean Healthways*, 55 V.I. at 698-99. This Court declined to consider the new theory because it had not been pleaded in the plaintiff's initial complaint. The Court did not impose a blanket requirement that all requests for injunctive relief must be contained in the pleadings; rather, the Court applied the well-settled principle that a claim cannot be raised for the first time on a motion for summary judgment. *See id.* at 698–99 (collecting sources).

¶ 18      The circumstances here are materially different. First, NA sought an injunction which concerned the same subject matter as the underlying action, aiming to preserve the status quo while the ownership of CU-1 and Great Bay's ability to assess fees was litigated. Second, *Caribbean Healthways* involved a dispositive motion—summary judgment—and a permanent injunction. The granting of both of these forms of relief is subject to more stringent

requirements. *See Caribbean Healthways*, 55 V.I. at 698–99. Here, NA sought only a TRO and preliminary injunction. Plainly, the gravamen of the decision in *Caribbean Healthways* was that the plaintiff attempted to raise a new claim for the first time on a motion for summary judgment. The instant case does not involve a motion for summary judgment, but rather an interlocutory order.

¶ 19     Third, and more fundamentally, *Caribbean Healthways* involved an injunction sought by the Plaintiff, not the Defendant—a distinction which underscores why Great Bay's proposed rule must fail. When the Superior Court action was initiated, NA had not paid expenses related to CU-1 for some years, and Great Bay had made no indication of its intention to issue invoices to individual members to collect on those past due sums. Therefore, when it answered Great Bay's complaint, NA understandably confined its reply to the substance of Great Bay's complaint—namely, ownership of CU-1, the validity of the deed, and the responsibility to assess and pay expenses. NA could not have foreseen that Great Bay, years into litigation, would issue invoices to each of NA's members, threatening to permanently bar them from their units if they did not pay the accrued unassessed fees. Accordingly, NA could not have been expected to include a request for injunctive relief proscribing Great Bay from making such assessments in its initial pleadings.

¶ 20     Great Bay's proposed rule would effectively bar defendants from seeking injunctive relief unless they were able to anticipate a plaintiff's conduct at the pleading stage. If a defendant were unable to do so, they would only be able to access such relief with the opposing party's consent or the leave of the court. *See* V.I.R. CIV. P. 15(a)(2). Put plainly, such a rule would allow a plaintiff to engage in conduct at will by simply waiting until the deadline to amend a complaint or file a counterclaim has passed.

¶ 21     Great Bay's other cited authorities—namely, *USX Corp. v. Barnhart*, 395 F.3d 161 (3d Cir. 2004); and *Phillip v. Marsh-Monsanto*, 66 V.I. 612 (2017)—are inapposite because they are cited for the propositions that a court cannot provide a remedy when one has not been included in a claim for relief, and that a court may not rewrite a party's pleadings to include a claim for relief that was never presented, respectively. As discussed, NA's application for injunctive relief was not a pleading, and thus these cases do not advance Great Bay's argument. Great Bay's final cited case, *Cruzan Tires v. Gov't of V.I.*, 68 V.I. 241 (Super. Ct. 2018), also concerned a ruling on a motion for a preliminary injunction where the plaintiff sought relief on a ground not pleaded in its complaint. For the reasons we have discussed, this case is also inapposite.

¶ 22     Because Rule 65—not Rules 8 or 15—governs applications for injunctive relief, and because adopting Great Bay's proposed rule would effectively and inequitably bar defendants from seeking injunctive relief, we decline to adopt Great Bay's proposed rule and hold that a request for injunctive relief does not necessarily need to appear in a pleading.

### ii.     NA's Motion Was Substantively Related to the Underlying Complaint

¶ 23     Great Bay next argues that the application for injunctive relief made by NA sought relief that was unrelated to the underlying action, and that the Superior Court therefore lacked authority to grant that relief. Specifically, Great Bay argues that the Superior Court could not properly rule on NA's motion because: (1) the motion for a TRO and preliminary injunction did not encompass the subject of the underlying Deed Action—namely, ownership of CU-1; and (2) NA did not assert a claim in its pleadings that would entitle it to rescission of the October 2021 invoices or declaratory judgment on NA Members' personal obligations to pay the CU-1 assessments.

¶ 24    In support of this contention, Great Bay cites *Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 317 (V.I. 2007), for the proposition that "[t]o be considered an injunction … the trial court's order must adjudicate some of the relief sought in the *complaint*." (Appellant's Br. at 23). As a threshold matter, we note that *Enrietto* is distinguishable from the case at bar inasmuch as it does not, as Great Bay contends, lay down a blanket rule that injunctions must adjudicate some relief sought in the complaint, but instead focuses on interpreting interlocutory orders to determine their appealability under the interlocutory review exception to the final judgment rule contained in 4 V.I.C. § 33(b)(1). *Id*. at 316. In *Enrietto*, the appellants sought appellate review of an interlocutory order which prohibited them from engaging in certain conduct which was unrelated to the claims in the underlying action. *Id*. at 313–15. In determining whether the interlocutory order at issue was appealable, this Court adopted a tripartite test from the Third Circuit,[12] the last prong of which is quoted by Great Bay in support of its argument. But *Enrietto* squarely does not apply to the case at bar. The *Enrietto* test concerns whether an order is an injunction, and therefore appealable under the interlocutory order exception to the final judgment rule. Here, however, Great Bay has not challenged whether the TRO or preliminary injunction are injunctions—indeed, their status as injunctions is what confers this Court's jurisdiction to hear this appeal. *See* 4 V.I.C. § 33(b)(1). *Enrietto* does not prescribe jurisdictional requirements regarding the subject matter of injunctions and their relation to the underlying complaint; rather, it provides a framework for determining the appealability of interlocutory orders when there is uncertainty as to whether those orders may be classified as injunctions under 4 V.I.C. § 33(b)(1). Accordingly, Great Bay's citation to

---

[12] The test is adopted from *New Jersey State Nurses Ass'n. v. Treacy*, 834 F.2d 67, 69 (3d Cir. 1987). The full test holds that in order to be injunctive in nature and therefore appealable under the interlocutory appeals exception, the order "must be (1) directed to a party; (2) enforceable by contempt; and (3) 'designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than a temporary fashion.'" *Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 316 (2007).

*Enrietto* for the proposition that every injunction must necessarily adjudicate some relief sought in the complaint is unavailing.

¶ 25      Even without this error, Great Bay's argument as to the relation of the injunctive relief to the underlying complaint is similarly unavailing. In the Virgin Islands, "a preliminary injunction is a temporary form of relief that preserves the status quo between the parties until the court decides on the merits of the case." *V.I. Gov't Hosp. & Health Facilities Corp. v. Wrensford*, 2025 V.I. 12, ¶ 36. Thus, it is true that the injunctive relief must bear some relationship to the underlying dispute. *See 3RC & Co.,* 63 V.I. at 550 (explaining that the first factor in deciding whether to grant injunctive relief is whether a movant can demonstrate reasonable probability of success *on the merits*). Here, however, the TRO and preliminary injunction issued by the Superior Court do relate to the underlying complaint. The subject of Great Bay's complaint is the ownership of CU-1 and the attendant responsibilities to assess fees related to its operation. The ownership and responsibility to assess and pay fees related to CU-1 thus formed the subject of the underlying dispute—the resolution of these questions was the subject of the Superior Court action initiated by Great Bay. When Great Bay issued the October 2021 invoices to NA's individual members, it did so essentially as a result of this dispute—NA had ceased assessing its members for fees and had stopped payments to Great Bay for expenses related to CU-1, because NA disagreed that it was the owner of CU-1. Settling the question of ownership and responsibility to assess and pay CU-1 fees was wholly the subject of Great Bay's complaint, and NA's failure to assess its members and pay expenses to Great Bay—which prompted Great Bay to issue the invoices—arose from that very question. Accordingly, because the injunctive relief granted was related to the underlying complaint and maintained the pre-litigation status quo of the parties, and because NA was not required to include a claim for such relief in its pleadings, we find that the injunctive relief granted

comports with Rule 65 and with this Court's jurisprudence relating to the grant of preliminary injunctions.

¶ 26    Great Bay lastly argues that injunctive relief was improper because it did not maintain the status quo between the parties. This is so, Great Bay contends, because the TRO and preliminary injunction did not relate to the underlying litigation. As discussed above, the purpose of a preliminary injunction is "to maintain the status quo, defined as 'the last, peaceable, non-contested status of the parties.'" *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584, 601 (2018) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)); *see also 3RC & Co., Inc.,* 63 V.I. at 557. Here, the status quo between the parties involved NA's position that it had deeded CU-1 to Great Bay and its attendant cessation of assessments and payments to Great Bay, as well as Great Bay's position that NA, not it, remained owner of CU-1 and responsible for assessments and the payment of related expenses. While the dispute between NA and Great Bay was ongoing, NA's members retained access to their units. This was the status quo between the parties for at least five years, the length of time for which Great Bay sought fees from NA's members. Thus, when Great Bay issued its October 2021 invoices seeking fees for that length of time, this represented a challenge to the status quo between the parties. By enjoining Great Bay from collecting its invoices, the existing ownership, assessment, and fee payment structure remained in place, and NA's members retained access to their units. In other words, the parties occupied their respective last non-contested status pending resolution of the ownership dispute.

### iii.    *NA Was Not Required to Show "Actual Success" on the Merits*

¶ 27    Great Bay finally contends that the Superior Court erred in granting the preliminary injunction because "[w]ithout actual success on the merits there can be no [permanent] injunction," and because NA has not asserted any claims in the Superior Court, it cannot obtain

actual success on the merits. (Appellant's Br. at 23); citing *Streibich v. Underwood,* 74 V.I. 488, 500 (V.I. 2021). We must note that this contention concerns preliminary injunctions, while the injunction Great Bay appeals from is preliminary.  Assuming *arguendo* that Great Bay is referring to preliminary injunctions, this argument must nonetheless fail.

¶ 28     The four factors that this Court has adopted when deciding a motion for a preliminary injunction are: "(1) whether the movant has shown a reasonable probability of success on the merits;  (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *3RC & Co.*, 63 V.I. at 550 (quoting *Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 590 (V.I. 2015) and *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013)).

¶ 29     In respect of the foregoing, because (1) NA's application for injunctive relief was governed by Rule 65 and was procedurally proper under that rule given that NA was not required to include its request in its pleadings; (2) the relief sought was directly related to the underlying dispute before the Superior Court; and (3) the Superior Court applied the *3RC* factors and found that NA had met each one, including a showing of a reasonable probability of success on the merits, the Superior Court's grant of the TRO and preliminary injunction was proper, and we therefore affirm.

**B.**     **Virgin Islands Rules of Civil Procedure Rules 52(a)(2) and 65(d)**

     *i.*      ***The Superior Court Did Not Fail to Comply with Rule 52(a)(2)***

¶ 30     Great Bay next argues that the Superior Court erred by failing to state its findings of fact and conclusions of law in granting the preliminary injunction, in violation of Virgin Islands

Rules of Civil Procedure 52(a)(2).[13] Great Bay cites to *Wessinger v. Wessinger,* 56 V.I. 481, 487, 488 (2012), to argue that because a "full and fair compliance with [Rule 52(a)(2)] is of the highest importance to a proper appellate review of the grant or denial of a preliminary injunction," the Superior Court abused its discretion by failing to make findings of fact when it imposed the injunction. *Id*. at 488.

¶ 31     We note as a threshold matter that Virgin Islands Rule of Appellate Procedure 22(m)(3) precludes arguments that are insufficiently presented to this Court on appeal. V.I. R. APP. P. 22(m)(3) ("Issues that…are only adverted to in a perfunctory manner…are deemed waived for purposes of appeal[.]"). In its brief, Great Bay notes only that Rule 52(a)(2) would require a court to issue findings of fact when it imposed the injunction and asserts that the Superior Court failed to do so. The thrust of Great Bay's Rule 52(a)(2) argument is largely unsupported and spans roughly three sentences.[14] This subjects Great Bay's argument to waiver. *See Gourmet Gallery Crown Bay, Inc.,* 68 V.I. at 600 (deeming a three-sentence *Banks* analysis as waived); (*Prosser v. Public Srvs. Comm'n of the U.S.V.I.*, 56 V.I. 391, n. 8 (V.I. 2012) (deeming a one-sentence argument as waived); *Constr. Technicians v. Zurich Am. Ins. Co.*, 61 V.I. 153, 162 (V.I. 2014) (holding an argument unsupported by citation to authorities, statutes, and the record as waived).

¶ 32     However, even if this Court were to consider the merits of Great Bay's Rule 52(a)(2) argument, we find its assertion to be unavailing. Rule 52(a)(2) provides that a court, "[i]n

---

[13] Great Bay erroneously cites to the December 16 order extending the TRO, the thrust of which was extension of the TRO until the issuance of an order of preliminary injunction and to set briefing and scheduling order deadlines for the parties.

[14] We also note that Great Bay's citation to the record belies its Rule 52(a)(2) argument. Great Bay cites to the transcript of the preliminary injunction hearing during which the Superior Court noted both that NA "provided sufficient testimony to meet . . . all four factors [supporting the grant of an injunction]," and that the Superior Court would later issue an opinion supporting its order. Rule 22(m)(3) also provides that issues "only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority" are subject to waiver.

granting or refusing an interlocutory injunction, [] must [] state the findings and conclusions that support its action." V.I.R. CIV. P. 52(a)(2). Relatedly, Rule 52(a)(1) provides that a court may state its findings and conclusions "on the record after the close of evidence *or* [] in an opinion or memorandum of decision . . . ." V.I.R. CIV. P. 52(a)(1) (emphasis added).

¶ 33     NA contends that Great Bay disregards the record wherein the Superior Court issued its finding of facts and conclusions of law at numerous points in the litigation—including when it imposed the TRO, at the conclusion of the preliminary injunction hearing, and again in the memorandum opinion granting the preliminary injunction. NA argues further that the memorandum opinion set forth detailed findings of fact and conclusions of law, and that Great Bay never objected to the substance of that opinion. (*Id*. at 21-22). And because Rule 52(a)(2) incorporates Rule 52(a)(1)'s mandate permitting after-the-fact issuance of findings and conclusions, NA argues that nothing in the Superior Court's opinion was procedurally improper under Rule 52. (*Id*. at 24). We agree.

¶ 34     Contrary to Great Bay's assertion, the Superior Court did issue a memorandum opinion in support of its order granting the preliminary injunction, providing both findings of fact and conclusions of law.[15] In its 31-page April 11 memorandum opinion, the Superior Court noted its findings of fact, applied those facts to the factors set out by this Court in *3RC & Co.* which are to guide the Superior Court's decision to grant an injunction, and concluded that a preliminary injunction was warranted based on the evidence presented by Great Bay and NA. Specifically, the Superior Court found: (1) NA had reasonable probability of success on the merits; (2) NA members would likely suffer irreparable harm if injunctive relief was denied; (3) Great Bay would not be harmed if the injunction was granted; and (4) the public interest

---

[15] Great Bay also acknowledges the Court's "findings" in analyzing the *3RC* factors in its Motion to Dissolve the TRO filed on November 15, 2021, undermining its argument herein. *See 3RC & Co.*, 63 V.I. at 550.

was satisfied in complying with the Virgin Islands Condominium Act (28 V.I.C. §§ 905, 909), declarations, amendments, and Great Bay's own governing and organizational documents. Therefore, because the Superior Court found facts, provided conclusions of law on each of the four *3RC* factors, and concluded the evidence supported a preliminary injunction in favor of NA, the Superior Court's April 11 order and memorandum opinion did not violate Rule 52(a)(2).

¶ 35　　Great Bay also points to language in *Wessinger,* arguing that "the Superior Court was required to make findings of fact when it imposed the injunction, and it abused its discretion in failing to do so." 65 V.I. at 488. In making this argument, Great Bay cites to the transcript of the December 15, 2021 preliminary injunction hearing. At the conclusion of the hearing and when making the order to extend the TRO, the Honorable Judge Gumbs-Carty stated:

> I'm going to continue the temporary restraining order. I am also – I also believe however, that [NA] has provided sufficient testimony to meet the factors, all four factors actually, in this matter. The Court therefore is going to grant that motion for the preliminary injunction. The injunction is instituted until the case makes the ultimate decision with respect to the deed in this matter. So the Court rules in favor at this point with respect to…NA…I will reduce my order to writing to be issued sometime in the Spring of 2022, but that's the order of the Court.

The December 15 hearing and order granting an extension of the TRO was issued after argument by both Great Bay and NA on whether a preliminary injunction should issue, and during which both parties addressed the Superior Court on whether the four factors of the *3RC* test warranted granting an injunction. After argument, the Superior Court issued an order dated December 16, 2021 and later, on April 11, 2022, issued a memorandum opinion in support of that order, in which it applied the four *3RC* factors. In other words, the Superior Court stated its findings of fact and conclusions of law on the record when it issued its December 15, 2021 order and again when it issued its April 11, 2022 order and memorandum opinion granting the preliminary injunction. Despite the fact that the Superior Court issued its full findings of fact

and conclusions of law after it issued the order granting the extension of the TRO, Rule 52(a)(1) permits this sort of after-the-fact issuance. Indeed, the plain language of Rule 52 does not impose any time requirement for a court to issue its findings; it only mandates that the court do so at some point. Moreover, *Wessinger*—Great Bay's only cited case to support its argument— is distinguishable from the case at bar in that the order in that case consisted of one sentence, devoid of any reasoning or authority. *Wessinger*, 65 V.I. at 487. Here, the Superior Court issued its order with ample reasoning and authority, ultimately expounding upon this reasoning in a 31-page memorandum opinion. Accordingly, because the Superior Court's extension of the TRO and grant of the preliminary injunction were accompanied by its findings of fact and conclusions of law, stated both on the record and later in a memorandum opinion, both complied with Rule 52(a)(2).

### ii.      *The Superior Court Did Not Fail to Comply with Rule 65(d)*

¶ 36      Next, Great Bay contends that the Superior Court erred in failing to "(A) state the reasons why [the preliminary injunction] was issued; (B) state [the preliminary injunction's] terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required," pursuant[16] to Rule 65(d).[17] (Appellant's Br. at 26-27).

---

[16] Great Bay incorrectly cites to Rule 65(c) instead of Rule 65(d) in its brief. We also note that Great Bay's contention regarding Rule 65(d) only appears in the first notice of appeal but does not appear in the amended notice of appeal.

[17] Rule 65(d) provides that

> Every order granting an injunction and every restraining order must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail — and not by referring to the complaint or other document
> — the act or acts restrained or required.

V.I.R. CIV. P. 65(d)(1).

¶ 37     In making this argument, Great Bay provides no citation to the record or argument as to Rule 65(d), concluding instead that the Superior Court abused its discretion in granting the preliminary injunction and requesting that this Court vacate the December 16, 2021 order. (*Id.* at 27). As discussed above, Great Bay's failure to provide either argument or citation to the record subjects this contention to waiver. *See* V.I. R. APP. P. 22(m)(3) (subjecting to waiver those arguments that are not supported by argument, authority, or citation to the record). But even if this court were to consider the merits of Great Bay's claim, we find that the Superior Court made no error under Rule 65.

¶ 38     Rule 65(d) requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it is issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." V.I.R. CIV. P. 65(d)(1). A defective injunctive order, under Rule 65(d), is one that: inconsistently names the parties to be enjoined; restrains actions that are substantially broader in scope than the relief sought in the complaint; or unnecessarily infringes upon a parties' rights. *See Sam's Food Distributors, Inc. v. NNA&O, LLC*, 73 V.I. 453 (V.I. 2020). In its April 11 order,[18] the Superior Court provided:

> [t]he Court having issued its memorandum opinion on this date, it is hereby ordered that Defendant's motion for preliminary injunctive relief is granted; and it is further ordered that preliminary injunction is imposed upon Great Bay []; and it is further ordered that Great Bay [] is enjoined from disbursing invoices upon [NA] members for any assessment fees regarding [CU-1], the restaurant and lounge, until final judgment of this matter….

The April 11 order explicitly states the party—Great Bay—and the actions to be enjoined: "disbursing invoices upon [NA] members for any assessment fees regarding [CU-1], the

---

[18] We note that Great Bay bases this argument on the December 15, 2021 order, which merely extended the TRO "until the issuance of the Order of Preliminary Injunction." Because the Superior Court imposed the preliminary injunction on April 11, 2022, the April 11th order, and not the December 15th order, is the guiding order.

restaurant and lounge, until final judgment of this matter." The Superior Court also went into greater detail in the memorandum opinion and incorporated the reasons supporting a preliminary injunction in favor of NA, namely, to preserve the status quo until CU-1 ownership can be determined. *See Great Bay Condominium Owners Ass'n v. Neighborhood Ass'n*, 2022 VI Super 41U, at ¶¶ 27-30.

¶ 39     Therefore, both the Superior Court's April 11 order and accompanying memorandum opinion adhered to Rule 65(d) by stating the reasons why it issued the preliminary injunction, the terms of the injunction, and the acts restrained. Accordingly, nothing in the Superior Court's preliminary injunction order or memorandum opinion violates Rules 52 and 65 of the Virgin Islands Rules of Civil Procedure.

### IV. CONCLUSION

¶ 40     Because the Superior Court's April 11, 2022 memorandum opinion provided detailed findings of fact and conclusions of law in support of its extension of the TRO and grant of preliminary injunction, we find that no violation of Rule 52(a)(2) occurred. Similarly, because the content of that order satisfied the requirements of Rule 65(d), we will not disturb the preliminary injunction on that ground. Further, because NA was not required to include an application for injunctive relief in its initial pleadings, we do not find that Rules 8 and 15 have been violated, and we decline to adopt Great Bay's suggestion that a party *must* include such a request in its pleadings. Moreover, the TRO and preliminary injunction are wholly related to the underlying ownership dispute. Finally, NA was not required to show actual success on the merits when applying for a preliminary injunction, and the Superior Court found in applying the *3RC* factors that NA did show a reasonable probability of success on the merits. Accordingly, we affirm the Superior Court's memorandum opinion and order granting the preliminary injunction.

**Dated this 29th  day of June 2026.**

**BY THE COURT:**

**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**
**DALILA E. PATTON, ESQ.**
**Clerk of the Supreme Court**

**By: /s/ Reisha Corneiro**
      **Deputy Clerk II**

**Dated: June 29, 2026**